IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| LA'TILA D. ABBOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13cv143–HEH |
| | ) | |
| MARKETSTAR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's
Motion for Default Judgment)**

This is an action for damages under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. §§ 2000e through 2000e-17. This matter is before the Court on

MarketStar's ("Defendant") Motion for Summary Judgment (ECF No. 34), which it filed

on August 21, 2013, and La'Tila D. Abbott's ("Plaintiff" proceeding *pro se* ) Motion for

Default Judgment[1] (ECF No. 37), which she filed on September 10, 2013. Both parties

have responded, and the matter is ripe for disposition. For the reasons that follow,

Defendant's Motion for Summary Judgment is granted.

---

[1] Plaintiff's Motion for Default Judgment will be denied as improperly filed. Under Federal Rule of Civil Procedure 55(a), a default judgment is only appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" the claims. Here, Defendant filed its Answer to Plaintiff's Amended Complaint (ECF No. 14) on April 24, 2012, and subsequently, fully responded to and defended against Plaintiff's claims in this litigation. Accordingly, default judgment is inappropriate, and Plaintiff's Motion for Default Judgment is denied.

## I. BACKGROUND

Under this Court's Local Rules, the Court accepts those facts not disputed to be admitted and also assumes that those facts not disputed by reference to record evidence are admitted by Plaintiff. E.D. Va. Loc. R. 56(B). This practice is consistent with the 2011 amendments to the Federal Rules of Civil Procedure, under which it is incumbent upon the parties to support their factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c); *see also Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (discussing 2011 amendments to Rule 56), *aff'd* 2012 U.S. App. LEXIS 12311 (4th Cir. June 18, 2012).

As required, the Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving the motion for summary judgment.

In April 2011, Plaintiff began working as a retail sales representative for Defendant. (Abbott Dep. at 8:18-20.) Her duties in this job included selling Verizon products and services, upgrading current products and services for customers, handling customer issues, and working local events and festivals for Defendant in Verizon's booths at those events. (*Id.* at 10:15-11:3; Aquilina Aff. ¶ 5.)

When Plaintiff began working for Defendant, she was given an opportunity to review Defendant's Employee Policies Manual ("Policy Manual"). (Abbott Dep. at 71:19-72:10; Ex. 10.) Plaintiff signed the Employee Policy Manual Acknowledgment,

indicating that she had read or will read the manual within two weeks of beginning her employment. (Abbott Dep. Ex. 11 thereto.) She did not read the manual. (Abbott Dep. at 72:3-12; Piazza Aff. ¶¶ 4-5 and Ex. A thereto.) The Policy Manual sets forth Defendant's Anti-Discrimination and Sexual Harassment Policy, which prohibits racial or sexual harassment or discrimination and provides for discipline, up to and including termination, for any policy violations. (Piazza Aff. ¶¶ 4-5 and Ex. A thereto.) The Policy Manual also explains Defendant's Open Door Policy and policy on Disciplinary Actions, which provide a mechanism through which an employee can complain about perceived discrimination or harassment. (*Id.*)

In May 2012, Plaintiff informed her manager, Phillip Aquilina, that she would be moving to the Atlanta area and submitted her resignation effective June 20, 2012. (Abbott Dep. at 16:13-17:10; Aquilina Aff. ¶ 6.) Plaintiff later informed Aquilina that her plans had changed and asked to extend her resignation date into August 2012. (Abbott Dep. at 22:7-23:13; Aquilina Aff. ¶¶ 6-7.) Plaintiff's resignation date was then set for August 14, 2012. (Aquilina Aff. ¶¶ 6.) As August 14, 2012 approached, Plaintiff indicated her plans changed again and that she was no longer relocating. (*Id.* at ¶ 7.) Plaintiff asked to continue working for Defendant, and she was allowed to continue her employment until she was terminated on March 5, 2013. (*Id.*)

A.      **Watermelon Festival**

On August 5, 2012, Plaintiff worked as a sales representative in the Verizon booth during the Watermelon Festival in Richmond, Virginia with another employee of Defendant. (Abbott Dep. at 31:8-13, 32:11-16.) Marketing Werks, a separate entity from

Defendant, was responsible for the set-up and logistical services at the booth. (Abbott Dep. at 31:14-32:10, Solovey Aff. ¶ 4.) During the festival, the boyfriend of one of the Marketing Werks employees, David, offered Plaintiff some watermelon. (Abbott Dep. at 33:1-34:10.) He asked Plaintiff three times if she wanted any watermelon. Plaintiff declined, and explained that she did not like watermelon. (*Id.*) The Marketing Werks employee and David laughed. Plaintiff asked "What's so funny," and the Marketing Werks employee said, "Well, you know, the racial thing, you know." (*Id.* at 34:2-4). David said "you know, Black people and watermelon. Black people typically or stereotypically . . . Black people usually like watermelon so I think it's hilarious that you say that you don't like watermelon." (*Id.* at 34:5-10).

Plaintiff complained about the comments to Jai Bryant, a MarketStar team lead, and Jon Solovey, Plaintiff's Area Sales Manager. (Abbott Dep. at 34:18-35:6, 38:1-38:9; Solovey Aff. ¶¶ 5-6.) Solovey immediately relayed the complaint to Defendant's Human Resources department and reported it to Verizon. (Abbott Dep. at 39:23-40:23, Exs. 4 & 5 thereto; Solovey Aff. ¶¶ 6-7.) The complaint was also relayed to Marketing Werks, informing them of Plaintiff's complaint concerning their employee and her boyfriend. (Abbott Dep. at 80:20-81:10; Abbott Dep. Ex. 13; Piazza Aff. ¶¶ 9-10 and Ex. D.)

**B.   Jazz Festival**

On August 12, 2012, Plaintiff was working at the Jazz Festival event in Richmond with Solovey. (Abbott Dep. at 46:5-7.) Marketing Werks provided the set-up and logistical services to Verizon for the event. At some point during the event, a Marketing Werks employee, Cameron, heard Plaintiff's accent and asked her if she was from New

4

York. (*Id.* at 46:15-16.) Plaintiff explained that she was from New York, and Cameron asked, "[h]ave you ever been to Harlem?" (*Id.* at 46:16-17.) Plaintiff responded, "[s]ure, I always go to Harlem. I have family in Harlem." (*Id.* at 46:17-18.) Cameron then asked, "[t]hey still have crack hoes running around there?" (*Id.* at 46:19-20.) Plaintiff responded, "[i]f you're referring to drug addicted prostitutes, they have those everywhere." (*Id.* at 46:20-22). Plaintiff was offended because her grandmother, who was addicted to crack cocaine, is from Harlem and was murdered there. (*Id.* at 48:6-13.) Plaintiff did not complain to Solovey about the question at the time, nor did she tell him it offended her. (*Id.* at 49:1-7.)

## C.    Plaintiff's Complaints and Defendant's Response

Plaintiff filed her first EEOC Claim[2] on August 16, 2012, alleging that she was subjected to harassment and discharged because of her race and gender. (Def.'s Mem. Supp. Summ. J., Ex. 5, ECF No. 35.) In her EEOC claim, Plaintiff cited the incidents that took place at the Watermelon and Jazz Festivals. (*Id.*)

In August 2012, Defendant's HR Director Elsie Piazza discussed both incidents with Plaintiff, and assured her by phone and email that she could continue her employment and would not be required to attend any events with Marketing Werks employees. (Piazza Aff. ¶ 7.) Defendant's HR department contacted Marketing Werks concerning both complaints. (*Id.* at ¶¶ 9-10.) Marketing Werks refused Defendant's request that the two Marketing Werks employees involved in Plaintiff's complaints no

---

[2] Plaintiff's first EEOC Claim is the only one at issue in this case.

longer work Verizon events. (*Id.*) Piazza stayed in contact with Plaintiff and kept her abreast of Defendant's follow-up efforts with Marketing Werks. (*Id.* at ¶ 8.)

## D.    Large Team Meeting

Plaintiff alleges that in January 2013 at a large team meeting, a sales representative for Defendant, Dave Thomas, referred to a woman from a different company with whom he had spoken over the phone as a "bimbo." (Abbott Dep. at 62:6-16.) After the meeting, another female employee told Plaintiff that Thomas made a dumb blonde remark about the other employee in the past. (*Id.* at 63:22-64:3.) Defendant has no record of Plaintiff or anyone else complaining about the comments allegedly made by Thomas – until Plaintiff's termination two months later. (Piazza Aff. ¶ 11.)

## E.    Plaintiff's Termination

On January 15, 2013, Plaintiff's manager, Aquilina, observed that Plaintiff had only worked a couple of hours of her shift, but turned in customer service qualification forms showing she had qualified ten customers that day. (Aquilina Aff. ¶¶ 8-9.) Plaintiff usually recorded eight to ten Loop Qualifications[3] in an entire shift. (*Id.* at ¶ 9.) Aquilina reviewed the customer qualification form and compared it to others. (*Id.* at ¶¶ 8-9.) He noticed that the customers on the form were the same customers Plaintiff had qualified on August 28, 2012. (*Id.* at ¶ 10; Abbott Dep. at 116:12-117:7.) Aquilina reported his

---

[3] One of the main job responsibilities of sales representatives working in Verizon locations is to "'qualify' customers for potential services, including Verizon FiOS service ("Loop Qualification")." (Aquilina Aff. ¶ 4.) "Service representatives complete Verizon FiOS Service Qualifier logs, recording each Loop Qualification during their shift. The Loop Qualifications numbers, in conjunction with other metrics, are then provided to Verizon and, among other things, are used to measure the performance of both individual sales representatives and retail store locations." (*Id.*)

discovery to HR and began consulting with HR Manager Daniel Hansen. (Aquilina Aff. ¶ 11.)

Upon Hansen's suggestion, Aquilina spent a few weeks attempting to contact all of the customers listed on Plaintiff's January 15 Qualification Log, to confirm whether they had visited the store on that day. (*Id.* at ¶¶ 10-11.) Aquilina spoke with four of the ten customers on the form – all of whom told him they had not been in the store for months and confirmed they were not in the store on January 15. (*Id.* at ¶ 11.)

After getting reports from those four customers, Aquilina, Hansen, and Defendant's HR Director Elsie Piazza discussed their findings with Plaintiff. (*Id.* at ¶ 12.) Plaintiff denied falsifying the January 15 records, but admitted to falsifying the qualification forms on other occasions. (*Id.* at ¶ 12; Piazza Aff. ¶ 14.) Defendant's Policy Manual specifically prohibits the "Falsification of timecards/timesheets/call reports or other records required in the transaction of Company business," which includes Loop Qualification logs. (Piazza Aff. ¶ 13; Ex. A thereto at 11.) Defendant routinely terminates employees who falsify company records. (Piazza Aff. ¶ 13; Exs. A & F thereto.) Accordingly, Defendant terminated Plaintiff on March 5, 2013. (Aquilina Aff. ¶¶ 12-13; Piazza Aff. ¶ 14.)

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

7

law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*,

372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247-48; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

## III. DISCUSSION

The record in this case fails to establish a prima facie case of discrimination and retaliation. Defendant accepted all of the facts alleged by Plaintiff as true, and Plaintiff's attempts to dispute some immaterial facts – mostly with her own opinions – are unavailing.[4] Accordingly, summary judgment is appropriate on each of these claims.

---

[4] Plaintiff objects to Defendant's Statement of Undisputed Facts by (1) contending Defendant "fails to prove that, plaintiff Abbott, never gave a final date in August of 2012 for employment," and that there was not an agreement regarding Plaintiff's resignation; (2) opining that Defendant did not "enforce their own policies of racial harassment/discrimination;" (3) explaining that Plaintiff "did not feel a need to make Jon Solovey aware that comments made at the Jazz Festival offended her because Solovey was within 2 feet" of the incident; (4) explaining that Plaintiff did not complain about Dave Thomas's "dumb bimbos" comment because Aquilina was present when the comment was made, and she felt uncomfortable and like she might be retaliated against; and (5) complaining that no additional training was done regarding racial or sexual harassment. (Pl.'s Mem. Opp. Mot. Summ. J. at 1-4, ECF No. 38.) Plaintiff's objections do not actually refute Defendant's undisputed facts, and, thus, are unpersuasive in our analysis of

## A.    Hostile Work Environment

First, Plaintiff does not present a prima facie case of unlawful discrimination. Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). One such theory of discrimination involves a hostile work environment claim in which a plaintiff must show that: (1) he or she experienced unwelcome harassment; (2) the harassment was based on a protected characteristic; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and (4) there is some basis for imposing liability on the employer. *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006) (citing *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).

Plaintiff contends that she was subjected to a racially and sexually hostile work environment in violation of Title VII. However, Plaintiff has not made a prima facie case because the alleged conduct was not sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, as required for a claim of a sexually or racially hostile work environment to prevail. "Establishing the third element

---

Defendant's Motion for Summary Judgment. Specifically, (1) the date of Plaintiff's requested resignation is immaterial under *Anderson* to the issue before us; (2) Plaintiff's opinion on whether Defendant enforced its policies is irrelevant at the summary judgment stage; (3) Plaintiff's explanation for not telling Solovey about the comments at the Jazz Festival is irrelevant because even though Plaintiff did not complain about that incident to Defendant, Plaintiff's EEOC claim informed Defendant about the incident, and, Defendant's awareness about the incident is not in dispute; (4) Plaintiff's complaint regarding Thomas's comments are not actionable because Plaintiff never complained about the alleged comments, and "Courts have refused to recognize a nebulous 'fear of retaliation' as a basis for remaining silent." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001); and (5) plaintiff's complaint regarding training does not refute Defendant's undisputed material facts.

[that the alleged conduct is sufficiently severe or pervasive] requires that the plaintiff show that the work environment was not only subjectively hostile, but also *objectively so.*" *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (emphasis added). Moreover, "simple teasing, off-hand comments, and *isolated* incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (emphasis added).

## 1.    Racial Claim

Plaintiff's racial harassment claim is based on a single comment made by the boyfriend of an employee of a different company during the Watermelon Festival in Richmond, Virginia on August 5, 2012. Plaintiff has not presented any evidence that any employee of Defendant's ever said anything to Plaintiff that was racially offensive. Plaintiff contends that the suggestion from the Marketing Werks' employee's boyfriend, David, that black people stereotypically like watermelon was offensive to her. Given the isolated nature of the remark, an objectively reasonable person could not believe this single comment by a by-stander at an event while Plaintiff was working created a hostile work environment. *Bonds,* 629 F.3d at 385; *see also Jordan*, 458 F.3d at 339.

## 2.    Sexual Claim

Plaintiff's sexual harassment claim is based on (1) a comment made by a Marketing Werks employee, Cameron, during the Richmond Jazz Festival on August 12, 2012; and (2) two unrelated comments made by Defendant's employee, Dave Thomas (one referring to a woman at another company as a "bimbo" at a large team meeting five

months later, and another blonde remark that a female employee told Plaintiff Thomas
had said to her in the past).

Plaintiff was uniquely offended by the comment at the Jazz Festival ("They still
have crack hoes running around [Harlem]?") because unbeknownst to Cameron or
anyone else present, Plaintiff's grandmother lived in Harlem, was addicted to crack
cocaine and was recently murdered. *Id.* Further, Plaintiff admits the question was not an
insinuation that she was a "crack hoe," but instead Cameron was "trying to relate to
[her]." (Abbott Dep. at 61:19-23.) In addition, Thomas's "bimbo" and blonde
comments, about which Plaintiff did not complain until she made her first EEOC Claim,
were not directed to Plaintiff, but instead were made to a large group or another
employee. (*Id.* at 62:6-21, 63:22-64:3.)

When assessed under the standard announced in *Bonds*, this Court must conclude
that no objectively reasonable person could believe these unrelated comments five
months apart (and one made by an individual employed by a separate company) could
create a sexually hostile work environment. Accordingly, Plaintiff has not met her
burden to show that these isolated incidents created a racially or sexually hostile work
environment under *Baqir*, 434 F.3d at 745-46.[5] Thus, because the evidence does not

---

[5] Even if Plaintiff had proven that she was subjected to a hostile work environment, Defendant is
still entitled to summary judgment because the record shows Defendant exercised reasonable
care in preventing future harassing behavior. Prompt corrective action that stops harassment
prevents imputation of liability to an employer. *Barrett v. Applied Radiant Energy Corp.*, 240
F.3d 262, 267 (4th Cir. 2001). Here, Defendant exercised reasonable care when: (1) it
distributed an anti-harassment policy to all employees (Piazza Aff. ¶¶ 4-5; Ex. A thereto) *see
Barrett*, 240 F.3d at 266 ("[d]istribution of an anti-harassment policy provides 'compelling
proof' that the company exercised reasonable care in preventing and promptly correcting sexual
harassment."); (2) Area Manager Jon Solovey reported Plaintiff's complaint about the

present "a sufficient disagreement to require submission to a jury," Defendant is entitled

to summary judgment. *Anderson*, 477 U.S. at 251-52.

## B.     Retaliation

Summary judgment is similarly appropriate on Plaintiff's claim that she was

terminated in retaliation for her EEOC claim.  Title VII prohibits employers from

"discriminat[ing] against any of [its] employees . . . *because* [the employee] has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this title."  42 U.S.C. § 2000e-3(a) (emphasis added).  The elements of a

prima facie retaliation claim under Title VII are: (1) engagement in a protected activity;

(2) adverse employment action; and (3) a causal link between the protected activity and

the employment action. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.

2010).

Plaintiff has not shown a causal connection between the alleged protected activity

and her termination because there is a *seven month gap* between the filing of Plaintiff's

first EEOC claim and her termination.  "A lengthy time lapse between the employer

becoming aware of the protected activity and the alleged adverse employment action, as

was the case here, negates any inference that a causal connection exists between the two."

---

Watermelon Festival to Defendant's HR Department and Verizon (Abbott Dep. at 39:23-41:19; Solovey Aff. ¶¶ 6-7 and Exs. A & B thereto); (3) When Defendant became aware of the incident at the Jazz Festival after Plaintiff filed an EEOC charge, Defendant contacted Marketing Werks about their response – despite the fact that the individuals involved in the incident were not employed by Defendant (Piazza Aff. ¶ 9 and Ex. D thereto); (4) Defendant followed up with Marketing Werks about the incident at the Jazz Festival, to determine whether the Marketing Werks employees involved would continue to work events where Defendant's employees, including Plaintiff, would be working  (*Id.* ¶¶ 9-10 and Exs. D, E thereto); and (5) Plaintiff did not complain again about any comment after the Watermelon and Jazz Festivals (Piazza Aff. ¶ 11).

*Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.

1998). The longer the time period between the protective activity and the alleged

retaliation, the less a court presumes a causal connection. *See Hooven-Lewis v. Caldera*,

249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference

of causation.") (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.

1997) (four month lag between protected activity and termination not sufficient to justify

an inference of causation).

Plaintiff filed her first EEOC claim on August 16, 2012 (Abbott Dep. at 102:22-

23, Ex. 5 thereto.) Almost seven months later, on March 5, 2013, Defendant terminated

Plaintiff. (Aquilina Aff. ¶ 13; Piazza Aff. ¶ 15.) The passage of seven months between

the filing of Plaintiff's EEOC claim and her later termination eliminates any inference of

a causal connection between the two. *Dowe*, 145 F.3d at 657.

Moreover, Defendant had a legitimate, non-discriminatory reason for terminating

Plaintiff. While Plaintiff offers the Court her legal conclusion that her firing was

retaliatory, she does not dispute Defendant's stated reason for her termination. (Pl.'s

Mem. Opp. Mot. Summ. J. at 4.) Plaintiff has not shown that the proffered reason for her

termination – that Plaintiff falsified company records concerning her Loop

Qualifications[6] (Aquilina Aff. ¶¶ 12-13; Piazza Aff. ¶¶ 14-15) – was "unworthy of

---

[6] Plaintiff contends that Defendant did an "incomplete, rushed and non-transparent investigation" of her falsification of Loop Qualifications. (Pl.'s Mem. Opp. Mot. Summ. J. at 4.) She also argues that Defendant did not document a legitimate reason for her termination. (*Id.*) However, Plaintiff tellingly does not dispute in this case that she falsified her loop qualification report for January 15, 2013. (*See Id.*)

credence" and thus, she fails to show that she was terminated out of retaliation. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Defendant has a long-standing policy of terminating sales representatives who falsify company records, including Loop Qualification records. (Piazza Aff. ¶ 13 and Exs. A, F thereto.) "If a plaintiff 'puts forth sufficient evidence to establish a prima facie case of retaliation' and a defendant 'offers a nondiscriminatory explanation' for her termination, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Yashenko v. Harrah's Casino*, 446 F.3d 541, 551 (4th Cir. 2006)). Plaintiff presents no evidence that Defendant's decision was pretextual. *Hoyle*, 650 F.3d at 337. Thus, her retaliation claim is unavailing.

## IV. CONCLUSION

In sum, the Court finds Plaintiff did not make a prima facie case of discrimination or retaliation. Therefore, Defendant's Motion for Summary Judgment (ECF No. 34) will be granted, Plaintiff's Motion for Default Judgment will be denied as improperly filed (ECF No. 37), and the case will be dismissed with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                          /s/
                                 Henry E. Hudson
                                 United States District Judge

Date: Oct. 8, 2013
Richmond, Virginia